Michael McShane (SBN 127944)
Ling Y. Kuang (SBN 296873)
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
mmcshane@audetlaw.com
lkuang@audetlaw.com

Brett R. Cohen, Esq. (SBN 337543)
bcohen@leedsbrownlaw.com
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, New York 11514
Tel:(516) 873-9550

*Additional counsel on signature block*

*Attorneys for Plaintiff Lisa Reingold*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| LISA REINGOLD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA PHYSICIANS' SERVICE d/b/a BLUE SHIELD OF CALIFORNIA,<br><br>Defendant. | **Case No:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lisa Reingold ("Plaintiff"), individually and on behalf of all others similarly situated ("Class"), by and through her undersigned counsel brings this class action against Defendant California Physicians' Service d/b/a Blue Shield of California ("Defendant" or "Blue Shield"), upon personal knowledge as to her own actions, upon the investigation of counsel, and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action for damages and injunctive relief against Defendant's systematic, ongoing practice of unlawfully disclosing Plaintiff's and proposed Class Members' personal, sensitive medical information to unauthorized third parties including Google, LLC ("Google") and additional unknown data collectors.

2. Defendant is one of the largest health care insurers in California with nearly 6 million members and over 7,500 employees.[1] Blue Shield provides a variety of care including PPO, HMO, dental, and vision networks[2] to its members with over 75,000 physicians over 380 hospitals.[3]

3. Defendant owns and controls blueshieldca.com and related webpages ("Website") and also owns and controls a mobile app ("App") (collectively "Website and App").

4. Blue Shield's Website and App allow Plaintiff and Class Members to access a digital copy of their medical ID card; pay bills including premiums using secure payment options; file insurance claims and track their status; manage their healthcare needs including scheduling telehealth appointments, accessing their health plans; and navigating resources to find urgent care facilities; compare costs, and prepare for non-emergent medical needs.

5. Due to the nature of the Website and App, Defendant knew its patients like Plaintiff, would use the Website and App to communicate sensitive and personal private information in regards to their health care while utilizing Blue Shield to receive medical care and insurance, including

[1] https://news.blueshieldca.com/2025/01/28/a-culture-of-philanthropy-99-of-blue-shield-of-californias-employees-gave-back-in-2024 (last visited Apr. 16, 2025).

[2] https://www.blueshieldca.com/en/home (last visited Apr. 16, 2025).

[3] https://www.blueshieldca.com/en/broker/large-groups/medical/network (last visited Apr. 16, 2025).

information related to payment, insurance plan type, address, gender, family size, medical claim service dates and provider name, type, and location, among other data.

6. Upon information and belief Defendant disclosed confidential personally identifiable information ("PII") and protected health information ("PHI") (PII and PHI collectively are "Private Information") as described above, to Google via Google Analytics in violation of various common and statutory data privacy laws.

7. The information Defendant shared with Google includes "Insurance plan name, type and group number; city; zip code; gender; family size; Blue Shield assigned identifiers for your online account; medical claim service date and service provider, patient name, and patient financial responsibility; and 'Find a Doctor' search criteria and results (location, plan name and type, provider named and type)".

8. The Office for Civil Rights at the United States Department of Health and Human Services ("HHS") has issued a Bulletin to highlight the obligations of HIPAA covered entities and business associates ("regulated entities") under the HIPAA Privacy, Security, and Breach Notification Rules ("HIPAA Rules") when using online tracking technologies. [4] The Bulletin expressly provides (in bold type) that "[r]egulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other **violations of the HIPAA Rules.**" In other words, HHS has expressly stated that Blue Shield's implementation of Tracking Technologies violates HIPAA Rules.

9. Plaintiff and other Class Members who used Blue Shield's Website and App were not made aware their Private Information was being shared with Google Analytics and as a result Plaintiff's and Class Members' Private Information was shared with Google's advertising product, Google Ads ("Data Breach"), without their consent or knowledge, for nearly three years, between April 2021 and January 2024.

---

[4] *See Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. DEPT. OF HEALTH & HUMAN SERV., https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited April 17, 2025).

10. Defendant claimed to have discovered the Data Breach on February 11, 2025, but only sent out notice to Plaintiff and Class Members on April 4, 2025.

11. As a result of Blue Shield's unlawful conduct in sharing Plaintiff's Private Information, Plaintiff and Class Members have suffered great harm, including invasion of privacy, loss of benefit of the bargain, diminution of value of their Private Information, statutory damages, and the continued and ongoing risk to their Private Information.

12. Plaintiff seeks to remedy these harms by bringing causes of action for (1) violation of the Electronic Communications Privacy Act 18 U.S.C. § 2510, *et seq*.; (2) violations of Cal. Civ. Code § 56, *et seq*.; (3) violations of Cal. Penal Code § 631, *et seq*.; (4) violations of Cal. Penal Code § 638.51(a); (5) violations of Cal. Bus. & Prof. Code § 17200, *et seq*.; (6) violations of Cal. Const. Art. 1 § 1; (7) breach of implied contract; (8) unjust enrichment; (9) invasion of privacy (publication of private facts); (10) breach of confidence; and, (11) invasion of privacy (intrusion upon seclusion).

**JURISDICTION AND VENUE**

13. This Court has original federal question subject matter jurisdiction pursuant to 28 U.S.C. §1331 and subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendant, and (4) there are more than 100 proposed Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

14. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District and Defendant conducts substantial business in this District.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendant is a resident and citizen of this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**PARTIES**

16. Plaintiff Lisa Reingold is a resident and citizen of Aliso Viejo, California where she intends to remain.

17. Defendant California Physicians' Service d/b/a Blue Shield of California is a nonprofit health plan provider with its principal place of business located at 601 12th Street, Oakland, California.

## FACTUAL ALLEGATIONS

**Background**

18. Blue Shield's Website and App contain a Google Analytics tracking pixel, Google Ads tool, and other related tracking tools ("Tracking Tools" or "Tracking Technologies") that secretly enable the unauthorized transmission and disclosure of Plaintiff's and Class Members' Private Information to Google.

19. A pixel is a piece of code that tracks website users and the types of actions they take. Pixels are routinely used to target specific customers by utilizing the data gathered through the pixel to build profiles for the purposes of retargeting and future marketing. Upon information and belief, Defendant utilized the Tracking Tools data to improve and save costs on its marketing campaign, improve its data analytics, and attract new patients. Defendant implemented Tracking Tools to bolster its profits.

20. Operating as designed, Defendant's tracking Pixel allowed the Private Information that Plaintiff and Class Members submitted to Defendant to be unlawfully disclosed to Google.

21. Defendant represents that its business "is a nonprofit health plan dedicated to providing Californians with access to high-quality health care at an affordable price."[5]

22. Defendant claims "At Blue Shield, we understand the importance of keeping your personal information private, and we take our obligation to do so very seriously. In the normal course of doing business, we create records about you, your medical treatment, and the services we provide to you."[6]

23. Defendant further represents that, "We maintain physical, technical, and administrative safeguards to ensure the privacy of your PHI. To protect your privacy, only Blue Shield workforce members who are authorized and trained are given access to our paper and electronic records and to

[5] https://www.blueshieldca.com/en/home/about-blue-shield (last visited Apr. 16, 2025).

[6] https://www.blueshieldca.com/content/dam/bsca/en/provider/documents/2024/guidelines-resources/PRV_Privacy-Practices-C18305-5-21-REF447117-XLOB.pdf (last visited Apr. 16, 2025).

non-public areas where this information is stored. Workforce members are trained on topics including: (1) Privacy and data protection policies and procedures, including how paper and electronic records are labeled, stored, filed, and accessed. (2) Physical, technical, and administrative safeguards in place to maintain the privacy and security of your PHI. Our corporate Privacy Office monitors how we follow our privacy policies and procedures and educates our organization on this important topic."[7]

24. Plaintiff and Class members are patients who have provided their Private Information to Defendant.

25. As a sophisticated company with an acute interest in maintaining the confidentiality of the Private Information entrusted to it, Defendant is well-aware of the numerous data breaches, including dozens directed at healthcare providers and insurers, that have occurred throughout the United States and their responsibility for safeguarding Private Information in their possession.

**The Data Breach**

26. According to an email notice received by Plaintiff from Blue Shield, "On February 11, 2025, Blue Shield discovered that, between April 2021 and January 2024, Google Analytics was configured in a way that allowed certain member data to be shared with Google's advertising product, Google Ads, that likely included protected health information."[8]

27. The Notice Email indicates that Plaintiff's Private Information had been impacted.[9]

28. The Notice Email did not indicate why Defendant was unable to prevent the Data Breach or which security feature failed.[10]

29. The Notice Email did not state why Defendant did not notify Plaintiff, among others, until April 4, 2025.[11]

---

[7] *Id.*

[8] *See* "Notice of Data Breach" email dated Apr. 4, 2025, from Blue Shield to Plaintiff, attached hereto as Exhibit 1 ("Notice Email").

[9] *Id.*

[10] *Id.*

[11] *Id.*

30. Defendant failed to prevent the Data Breach because they did not adhere to commonly accepted security standards and failed to monitor and audit their systems to ensure that Private Information would not be shared with third parties.

**Defendant's Privacy Policies and Promises**

31. Defendant's privacy policies represent to Plaintiff and Class Members that Defendant will keep Private Information private and confidential and it will only disclose Private Information under certain circumstances.[12] None of these circumstances apply here.

32. Defendant's Notice of Privacy Practices explains Defendant's legal duties with respect to Private Information, and the purposes for which Defendant can lawfully use and disclose Plaintiff's and Class Members' Private Information, as follows:[13]

- Patient treatment i.e. to share with nurses, doctors, pharmacists, optometrists, health educators, and other healthcare professionals to determine a patients plan of care and obtain treatment or services such as ordering lab tests
- For Payment relating to coverage
- Healthcare operations
- Disclosures to others involved in a patients health care i.e. family members, close friends, or care givers
- Disclosures to a patient's plan sponsor
- Disclosures to vendors and accreditation organizations
- Communications to patients to inform about Blue Shield health plan coverage, benefits, health-related programs and services, treatment reminders, or treatment alternatives available
- Health or safety threats
- Public health activities i.e. to report child abuse neglect, report health information to health authorities authorized by law, to report to the U.S. Food and Drug Administration about a product, or alert a person who may have been exposed to a disease
- Health oversight activities
- Research as allowed by law
- Compliance with the law
- Judicial and administrative proceedings
- Government functions
- Workers' compensation

33. Defendant's privacy policy does not permit Defendant to intercept and disclose Plaintiff's and Class Members' Private Information to third parties, including Google, for marketing purposes, without their consent.

[12] https://www.blueshieldca.com/content/dam/bsca/en/provider/documents/2024/guidelines-resources/PRV_Privacy-Practices-C18305-5-21-REF447117-XLOB.pdf

[13] *Id.*

34. Defendant violated its own privacy policy by unlawfully intercepting and disclosing Plaintiff's and Class Members' Private Information to Google and third parties without adequately disclosing that it shared Private Information with third parties and without acquiring the specific patients' consent or authorization to share their Private Information.

**Injuries to Plaintiff and the Class**

35. On April 4, 2025, Plaintiff received the Notice Email from Defendant, wherein she was advised that her Private Information previously provided to Blue Shield was compromised during the Data Breach.[14]

36. As a direct and proximate result of Defendant's actions and omissions in failing to protect Plaintiff's Private Information, Plaintiff and the Class have been damaged.

37. Plaintiff and the Class have suffered or are at increased risk of suffering from, *inter alia*, the loss of the opportunity to control how their Private Information is used, the diminution in the value and/or use of their Private Information entrusted to Defendant, and loss of privacy.

**The Value of PII**

38. It is well known that PII, and financial account information in particular, is an invaluable commodity and a frequent target of hackers.

39. According to Javelin Strategy & Research, in 2017 alone over 16.7 million individuals were affected by identity theft, causing $16.8 billion to be stolen.[15]

40. People place a high value not only on their PII and PHI, but also on the privacy of that data. This is because identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.[16]

---

[14] *Id.*

[15] Javelin Strategy & Research, *Identity Fraud Hits All Time High With 16.7 Million U.S. Victims in 2017, According to New Javelin Strategy & Research Study* (Feb. 6, 2018), https://www.javelinstrategy.com/press-release/identity-fraud-hits-all-time-high-167-million-us-victims-2017-according-new-javelin.

[16] Identity Theft Resource Center, *Identity Theft: The Aftermath 2017*, https://www.ftc.gov/system/files/documents/public_comments/2017/10/00004-141444.pdf.

41. People are particularly concerned with protecting the privacy of their financial account information and social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers."[17] There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they know their social security numbers have been accessed, Plaintiff and Class members cannot obtain new numbers unless they become a victim of social security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all [] problems … and won't guarantee … a fresh start."[18]

**Defendant Violated HIPAA and Industry Standards**

42. In December 2022, HHS issued a bulletin ("HHS Bulletin") warning regulated entities like Defendant about the risks presented by the use of Tracking Tools on their websites:

> Regulated entities [those to which HIPAA applies] are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA compliant authorizations, would constitute impermissible disclosures.[19]

43. The HHS Bulletin further warns that:

> While it has always been true that regulated entities may not impermissibly disclose PHI to tracking technology vendors, because of the proliferation of tracking technologies collecting sensitive information, now more than ever, it is critical for regulated entities to ensure that they disclose PHI only as expressly permitted or required by the HIPAA Privacy Rule.[20]

44. In addition, HHS and the FTC have recently issued a letter, once again admonishing entities like Defendant to stop using Tracking Tools:

> If you are a covered entity or business associate ("regulated entities") under HIPAA, you must comply with the HIPAA Privacy, Security, and Breach Notification Rules (HIPAA Rules), with regard to protected health information (PHI) that is transmitted or maintained in electronic or any other form or medium. The HIPAA Rules apply when the information that a regulated entity collects through tracking technologies or discloses to third parties (e.g., tracking

[17] Cameron Huddleston, *How to Protect Your Kids From the Anthem Data Breach*, Kiplinger (Feb. 10, 2015), https://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-data-brea.html.

[18] Social Security Admin., *Identity Theft and Your Social Security Number*, at 6-7, https://www.ssa.gov/pubs/EN-05-10064.pdf.

[19] *See Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* (Dec. 1, 2022), available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited Apr. 16, 2025). (emphasis added).

[20] *Id.*

> technology vendors) includes PHI. . . Even if you are not covered by HIPAA, you still have an obligation to protect against impermissible disclosures of personal health information under the FTC Act and the FTC Health Breach Notification Rule. . . As recent FTC enforcement actions demonstrate, it is essential to monitor data flows of health information to third parties via technologies you have integrated into your website or app. The disclosure of such information without a consumer's authorization can, in some circumstances, violate the FTC Act as well as constitute a breach of security under the FTC's Health Breach Notification Rule.[21]

45. Under Federal Law, a healthcare provider may not disclose personally identifiable, non-public medical information about a patient, a potential patient, or household member of a patient for marketing purposes without the patients' express written authorization.[22]

46. The HIPAA Privacy Rule requires any "covered entity"—which includes pharmacies—to maintain appropriate safeguards to protect the privacy of protected health information and sets limits and conditions on the uses and disclosures that may be made of protected health information without authorization. 45 C.F.R. §§ 160.103, 164.502.

47. An individual or corporation violates the HIPAA Privacy Rule if it knowingly and in violation of 42 U.S.C. §§ 1320d-1320d-9 ("Part C"): "(1) uses or causes to be used a unique health identifier; [or] (2) obtains individually identifiable health information relating to an individual." The statute states that a "person … shall be considered to have obtained or disclosed individually identifiable health information in violation of [Part C] if the information is maintained by a covered entity … and the individual obtained or disclosed such information without authorization." 42 U.S.C. § 1320d-6.

48. The criminal and civil penalties imposed by 42 U.S.C. § 1320d-6 apply directly to Defendant when it is knowingly disclosing individually identifiable health information relating to an individual, as those terms are defined under HIPAA.

49. Violation of 42 U.S.C. § 1320d-6 is subject to criminal penalties. 42 U.S.C.§ 1320d-6(b). There is a penalty enhancement where "the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious

---

[21] *Re: Use of Online Tracking Technologies,* U.S. Dept. of Health & Hum. Servs. and Fed. Trade. Comm'n (July 20, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/FTC-OCR-Letter-Third-Party-Trackers-07-20-2023.pdf.

[22] HIPAA, 42 U.S.C. § 1320; 45 C.F.R. §§ 164.502; 164.508(a)(3), 164.514(b)(2)(i).

harm." In such cases, the entity that knowingly obtains individually identifiable health information relating to an individual shall "be fined not more than $250,000, imprisoned not more than 10 years, or both."

50. A medical provider's duty of confidentiality is a cardinal rule and is embedded in the physician-patient and hospital-patient relationship.

51. The American Medical Association's ("AMA") Code of Medical Ethics contains numerous rules protecting the privacy of patient data and communications.

52. AMA Code of Ethics Opinion 3.1.1 provides:

> Protecting information gathered in association with the care of the patient is a core value in health care…Patient privacy encompasses a number of aspects, including,…personal data (informational privacy)

53. AMA Code of Medical Ethics Opinion 3.2.4 provides:

> Information gathered and recorded in association with the care of the patient is confidential. Patients are entitled to expect that the sensitive personal information they divulge will be used solely to enable their physician to most effectively provide needed services. Disclosing information for commercial purposes without consent undermines trust, violates principles of informed consent and confidentiality, and may harm the integrity of the patient-physician relationship. Physicians who propose to permit third-party access to specific patient information for commercial purposes should: (A) Only provide data that has been de-identified. [and] (b) Fully inform each patient whose record would be involved (or the patient's authorized surrogate when the individual lacks decision-making capacity about the purposes for which access would be granted.

54. AMA Code of Medical Ethics Opinion 3.3.2 provides:

> Information gathered and recorded in association with the care of a patient is confidential, regardless of the form in which it is collected or stored. Physicians who collect or store patient information electronically…must…:(c ) release patient information only in keeping ethics guidelines for confidentiality.

55. Because Defendant was entrusted with Plaintiff and Class Members' Private Information, they had, and have, a duty to consumers to keep their Private Information secure.

56. Patients, such as Plaintiff and the Class, reasonably expect that when they provide Private Information to companies such as Defendant, that their Private Information will be safeguarded.

57. Nonetheless, Defendant failed to prevent the Data Breach. Had Defendant properly maintained, audited, monitored, and protected their systems, they could have prevented the Data Breach.

**IP Addresses are Personally Identifiable Information**

58. On information and belief, through the use of the Tracking Tools on the Website, Defendant also disclosed and otherwise assisted Google with intercepting Plaintiff's and Class Members' IP addresses.

59. An IP address is a number that identifies the address of a device connected to the Internet.

60. IP addresses are used to identify and route communications on the Internet.

61. IP addresses of individual Internet users are used by Internet service providers, websites, and third-party tracking companies to facilitate and track Internet communications.

62. Google also tracks IP addresses associated with Internet users.

63. Google, and other third-party marketing companies track IP addresses for use of tracking and targeting individual homes and their occupants with advertising by using IP addresses.

64. Under HIPAA, an IP address is considered personally identifiable information: HIPAA defines personally identifiable information to include "any unique identifying number, characteristic or code" and specifically lists the example of IP addresses. *See* 45 C.F.R. § 164.514 (2). HIPAA further defines information as personally identifiable where the covered entity has "actual knowledge that the information could be used to identify an individual who is a subject of the information." 45 C.F.R. § 164.514(2)(ii); *See* also, 45 C.F.R. § 164.514(b)(2)(i)(O).

65. Consequently, by disclosing IP addresses, Defendant's business practices violated HIPAA and industry privacy standards.

**Defendant was Enriched from the Use of the Pixel and the Unauthorized Disclosures**

66. Defendant used Tracking Tools on the Website solely for marketing purposes, related to increasing its ultimate profitability.

67. In exchange for disclosing the Private Information of its patients, Defendant is compensated by Facebook in the form of enhanced advertising services and more cost-efficient marketing on Facebook.

68. Retargeting is a form of online marketing that targets users with ads based on their previous internet communications and interactions.

69. Upon information and belief, as part of its marketing campaign, Defendant re-targeted patients and potential patients.

70. By utilizing Tracking Tools, the cost of advertising and retargeting was reduced, thereby benefitting Defendant.

**Plaintiff's Experience**

71. Plaintiff has been insured by Blue Shield and used Blue Shield's services for several years.

72. As a member of Blue Shield's insurance plans, and in order to obtain medical treatment and insurance services, Plaintiff accessed and used Blue Shield's Website and App on her phone and computer.

73. For the time period she was insured by Blue Shield, she has used these same devices to access her Google account and email, and stays logged into these accounts.

74. Plaintiff communicated her Private Information to Blue Shield when she used the Website and App, and she specifically recalls using the "Find a Doctor" form and webpage to identify an in-network healthcare provider.

75. More specifically, she recalls using the filtering feature available to obtain the narrowest selection, which communicated the following: (1) the type of physician or medical provider she was seeking; (2) the specific medical services she was seeking; (3) the vision products sought during her visit; (4) her location; and (5) additional details about her desired physician and their practice area.

76. Plaintiff reasonably expected that—as a health plan member seeking medical treatment and services—her communications were confidential and would not be received by Google or other unknown third-parties, or used for marketing purposes, without her express written consent. That was not the case.

77. Upon information and belief, Plaintiff's use of the Website disclosed to Google and other third parties her location, IP address, and the fact that she was seeking medical services with Blue Shield.

78. Plaintiff did not, and does not, consent to the disclosure of her Private Information by Defendant to third parties like Google for commercial purposes.

79. Plaintiff has suffered injury from the invasion of her privacy.

80. Plaintiff has suffered injury from the diminished value of her Personal Information.

81. In fact, many companies are using data obtained by Tracking Tools to decide whether to raise insurance premiums or deny coverage.[23]

82. As identified by the United States Department of Health and Human Services, Plaintiff and Class Members have suffered and continue to suffer various injuries due to the disclosure of their PHI because "an impermissible disclosure of PHI may result in identity theft, financial loss, discrimination, stigma, mental anguish, or other serious negative consequences to the reputation, health, or physical safety of the individual or to others identified in the individual's PHI. Such disclosures can reveal incredibly sensitive information about an individual, including diagnoses, frequency of visits to a therapist or other health care professionals, and where an individual seeks medical treatment."[24]

## **CLASS ACTION ALLEGATIONS**

83. Plaintiff, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23.

84. The proposed Class is defined as follows:

> All patients and/or members of Blue Shield who used the Website and App belonging to Blue Shield (or one of its agents), and as a result, had their PII or PHI transmitted to Google or other third parties without authorization during the relevant time period as a result of using the Website and App.

85. Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Class based upon discovery and further investigation.

---

[23] *See In re Consumer Vehicle Driving Data Tracking Litig.*, 737 F. Supp. 3d 1355 (J.P.M.L. 2024) (alleging General Motors and OnStar improperly used Tracking Tools to disseminate information to third parties); *see also Texas v. The Allstate Corporation et al.* (Tex. Dist. Ct., Montgomery Cty.), https://www.texasattorneygeneral.gov/sites/default/files/images/press/Allstate%20and%20Arity%20Petition%20Filed.pdf.

[24] *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited Apr. 17, 2025)

86. *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. Although the precise number is not yet known to Plaintiff, the number can be readily identified through Defendant's records.

87. *Commonality*: Questions of law or fact common to the Class include, without limitation:

a. Whether Defendant unlawfully used, maintained, or disclosed Plaintiff's and Class Members' Private Information;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information it maintained;

c. Whether Defendant's use and disclosure of Private Information complied with applicable data security laws and regulations including, *e.g.*, HIPAA;

d. Whether Defendant's policies and procedures were consistent with industry standards and customs;

e. Whether Defendant owed a duty to Class Members to maintain the confidentiality of their Private Information;

f. Whether Defendant breached its duty to Class Members to maintain the confidentiality of their Private Information;

g. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

h. Whether Defendant's conduct was negligent, reckless, and/or intentional;

i. Whether Defendant's acts, inactions, and practices complained of herein amount to an invasion of privacy under the law;

j. Whether Defendant breached implied or express contracts with Plaintiff and Class Members;

k. Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members; and

l. Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

88. *Typicality*: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendant relating to the same course of conduct, and Class members are entitled to relief under the same legal theories asserted by Plaintiff.

89. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, privacy and data breach class actions.

90. *Predominance*: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiff and the Class and whether Defendant breached their duties predominate over individual questions such as measurement of economic damages.

91. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

92. *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

93. The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

94. The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

95. Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

**COUNT I**

**Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*.**

96. Plaintiff brings this claim on behalf of herself and the Class, and repeats and re-alleges each and every paragraph in the Complaint as if fully set forth herein.

97. The Electronic Communications Privacy Act of 1986 ("ECPA"), prohibits the intentional interception, use, or disclosure of any wire, oral, or electronic communication and prohibits any person from intentionally intercepting, endeavoring to intercept, or procuring "any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).

98. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

99. The transmissions of Plaintiff's Private Information via Defendant's Website and App is a "communication" under 18 U.S.C. § 2510(12).

100. The transmission of Private Information between Plaintiff and Class Members and Defendant via its Website and App are "electronic communications" under 18 U.S.C. § 2510(2) because they are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce."

101. 18 U.S.C. § 2510(8) provides that "contents", when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication.

102. 18 U.S.C. § 2510(4) provides that "intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.

103. 18 U.S.C. § 2510(5) provides that "electronic, mechanical, or other device" means "any device or apparatus which can be used to intercept a wire, oral, or electronic communication," other than certain devices not relevant here.

104. When Plaintiff and Class Members interacted with Defendant's Website and App, Defendant, through the Tracking Tools embedded and operating on its Website and App, contemporaneously and intentionally disclosed, used, and redirected, and endeavored to disclose, use, and redirect, the contents of Plaintiff's and Class Members' electronic communications to third parties, including Google, without authorization or consent, and knowing or having reason to know that the electronic communications were obtained in violation of 18 U.S.C. § 2511(1)(c)-(d).

105. Defendant's intercepted communications include, but are not limited to, the contents of communications to/from Plaintiff and Class Members regarding PII and PHI.

106. By intentionally disclosing or endeavoring to disclose the electronic communications of Plaintiff and Class Members to Facebook, Google, and Microsoft, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(c)-(d).

107. Defendant intentionally used the wire or electronic communications to increase its profit margins, and it specifically used the Tracking Tools to track and utilize Plaintiff's and Class Members' Private Information for financial gain.

108. Defendant was not acting under color of law to intercept Plaintiff's and Class Members' wire or electronic communication.

109. Plaintiff and Class Members did not authorize Defendant to acquire the content(s) of their communications via the Tracking Tools for purposes of invading their privacy.

110. Any purported consent Defendant received from Plaintiff and Class Members was not valid.

111. Defendant intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a tortious or criminal act in violation of the Constitution or laws of the United States or of any State – namely, violations of HIPAA, breaches of confidence, invasion of privacy, among others.

112. The ECPA provides that a "party to the communication" may be liable where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C § 2511(2)(d).

113. Defendant is a "party to the communication" with respect to Plaintiff's and Class Members' communications, but its simultaneous, unknown duplication, forwarding, and interception of Plaintiff's and Class Members' Private Information does not qualify for the party exemption.

114. More specifically, Defendant's acquisition of Plaintiff's and Class Members' communications, which were used and disclosed to unauthorized third parties, was done for the purpose of committing criminal and tortious acts in violation of the laws of the United States and individual states including California, including:

a. 42 U.S.C. § 1320d-6;

b. 45 CFR § 164.508(a)(1);

c. 15 U.S.C. § 45;

d. Cal. Penal Code § 631, *et seq.*;

e. Cal. Penal Code §638.51(a);

f. Cal. Civ. Code § 56, *et seq.*;

g. Cal. Bus. & Prof. Code § 17200; and

h. The common law causes of action alleged herein.

115. Under 42 U.S.C. § 1320d-6, it is a criminal violation for a person to "use[] or cause[] to be used a unique health identifier" or to "disclose[] individually identifiable health information to another person … without authorization" from the patient.

116. The penalty for violation is enhanced where "the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm." 42 U.S.C. § 1320d-6.

117. Defendant's conduct violated 42 U.S.C. § 1320d-6 in that it:

a. Used and caused to be used persistent identifiers associated with specific patients without patient authorization; and

b. Disclosed individually identifiable health information to Google without patient authorization.

118. Defendant's conduct would be subject to the enhanced provisions of 42 U.S.C. § 1320d-6 because Defendant's use of the Tracking Technology was for its commercial advantage to increase revenue from existing patients and gain new patients.

119. Defendant is not exempt from ECPA liability under 18 U.S.C. § 2511(2)(d) on the ground that it was a participant in Plaintiff's and Class Members' communications because Defendant used its participation in these communications to improperly share Private Information with third-parties that did not participate in these communications (e.g., Google) when Plaintiff and Class Members: (1) were unaware those third parties would receive their Private Information; and (2) did not consent to them receiving their Private Information.

120. Defendant accessed, obtained, and disclosed Plaintiff's and Class Members' Private Information for the purpose of committing the crimes and torts described herein because it would not have been able to obtain the information or the marketing services if it had complied with the law.

121. As such, Defendant cannot viably claim any exception to ECPA liability.

122. Plaintiff and Class Members have suffered damages as a direct and proximate result of Defendant's invasion of privacy.

123. As a result of Defendant's violation of the ECPA, Plaintiff and Class Members are entitled to all damages available under 18 U.S.C. § 2520, including statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs.

## COUNT II

### California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.*

124. Plaintiff brings this claim on behalf of herself and the Class, and repeats and re-alleges each and every paragraph in the Complaint as if fully set forth herein.

125. The Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56, *et seq.*, prohibits health care service plans from disclosing medical information relating to their patients without a patient's express authorization. Medical information refers to "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care… regarding a patient's medical history, mental or physical condition, or treatment." 'Individually

Identifiable' means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual..." Cal. Civ. Code § 56.05.

126. Defendant is a health care service plan as defined by Cal. Civ. Code § 56.06.

127. Plaintiff and Class Members are members of Defendant and, as a health care service plan, Defendant has an ongoing obligation to comply with the CMIA's requirements with respect to Plaintiff's and Class Members' confidential PHI.

128. As set forth above, names, addresses, telephone numbers, email addresses, device identifiers, web URLs, IP addresses, city and zip code, and other characteristics that can uniquely identify Plaintiff and Class Members are transmitted to Google in combination with insurance information, medical conditions, medical concerns, treatment(s) sought by the patients, attempts to pay bills, and other patient searches and queries. This Private Information constitutes confidential information under the CMIA.

129. The information communicated to Defendant and disclosed to Google and other third parties constitutes medical information under the CMIA because it is information derived from a health care service plan member regarding a patient's medical treatment and physical condition and is received in combination with individually identifying information. Cal. Civ. Code § 56.05(g) and 56.05(j).

130. As alleged above, Google views, processes, and analyzes the confidential PHI it receives via Google Analytics. Google then uses the viewed confidential PHI for advertising and marketing purposes.

131. Defendant failed to obtain Plaintiff's and Class Members' authorization for the disclosure of their PHI.

132. Pursuant to CMIA Section 56.11, a valid authorization for disclosure of PHI must: (1) be "clearly separate from any other language present on the same page and … executed by a signature which serves no other purpose than to execute the authorization;" (2) be signed and dated by the patient or their representative; (3) state the name and function of the third party that receives the information; and (4) state a specific date after which the authorization expires. The information set forth on

Defendant's Website and App, including the Website's Privacy Policy and Notice of Privacy Practices, does not qualify as a valid disclosure or authorization.

133. Defendant violated the CMIA by disclosing its patients' PHI to Google along with the patients' individually identifying information.

134. Plaintiff and Class Members seek nominal damages, compensatory damages, punitive damages, attorneys' fees, and costs of litigation for Defendant's violations of the CMIA.

## COUNT III

### California Invasion of Privacy Act, Cal. Penal Code § 631, *et seq.*

135. Plaintiff brings this claim on behalf of herself and the Class, and repeats and re-alleges each and every paragraph in the Complaint as if fully set forth herein.

136. The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638. California Penal Code § 631(a) provides, in pertinent part (emphasis added): "Any person who, by means of any machine, instrument, or contrivance, or in any other manner … willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500)."

137. At all relevant times, Defendant aided, employed, agreed with, and conspired with third parties, including Google, to track and intercept Plaintiff's and Class Members' Website and App communications. These communications were transmitted to and intercepted by a third party during the communication and without the knowledge, authorization, or consent of Plaintiff and Class Members.

138. Defendant intentionally inserted an electronic listening device onto Plaintiff's and Class Members' web browsers and devices that, without their knowledge and consent, tracked and transmitted the substance of their confidential communications to Google and other unauthorized third parties—each of whom constitute a "person" within the meaning of the statute.

139. Defendant willingly facilitated the interception and collection of Plaintiff's and Class Members' Private Information by embedding Google Analytics on its Website and App.

140. Moreover, Google Analytics, and Tracking Tools are: (1) completely invisible to Website and App users; and (2) Defendant has full control over these tools, including where they are embedded, what information is tracked and transmitted, and how events are categorized prior to their transmission.

141. Defendant's Tracking Technologies constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, they fall under the broad catch-all category of "any other manner."

142. Defendant failed to disclose its use of the Tracking Technologies to specifically track and automatically and simultaneously transmit Plaintiff's and Class Members' communications to Google and other undisclosed third-parties.

143. A portion of the Tracking Technologies—such as Google Analytics—are designed to transmit a website user's actions and communications contemporaneously as the user initiates each communication. As a result, the user's communications are intercepted in transit to the intended recipient—Defendant—before reaching Defendant's server.

144. Defendant violated CIPA by aiding and permitting third parties to intercept and receive its patients' online communications in real time as they were made. Importantly, Google and other unauthorized third parties would not have intercepted or received the contents of these communications but for Defendant's actions, including its decision to install the Tracking Tools on its Website and App.

145. By disclosing Plaintiff's and Class Members' Private Information, Defendant violated Plaintiff's and Class Members statutorily protected right to privacy.

146. As a result of the above violations, and pursuant to CIPA Section 637.2, Defendant is liable to Plaintiff and Class Members for treble actual damages related to their loss of privacy in an amount to be determined at trial or for statutory damages in the amount of $5,000 per violation. Section 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the Plaintiff has suffered, or be threatened with, actual damages."

147. Under the statute, Defendant is also liable for reasonable attorney's fees, litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by the Defendant in the future.

**COUNT IV**

**California Invasion of Privacy Act, Cal. Penal Code § 638.51(a)**

148. Plaintiff brings this claim on behalf of herself and the Class, and repeats and re-alleges each and every paragraph in the Complaint as if fully set forth herein.

149. Ca. Penal Code § 638.51(a) forbids any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order."

150. Cal. Penal Code § 638.50(b) provides that a "pen register" is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of the communication."

151. The Tracking Tools are "pen registers" because they are device[s] or process[es]" that "capture[d]" the "routing, addressing, or signaling information" from Plaintiff and Class Members' electronic communications. *Id.*

152. At all relevant times, Defendant installed the Tracking Tools—which are pen registers—onto Plaintiff's and Class Members' browsers, and it used the Tracking Tools to collect Plaintiff's and Class Members' Private Information.

153. Plaintiff and Class Members did not provide their consent to Defendant's installation or use of the Tracking Tools, and Defendant did not obtain a court order to install or use the Tracking Tools.

154. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Defendant's violations of § 638.51(a), and each seek statutory damages of $5,000 for each of Defendant's violations of § 638.51(a).

**COUNT V**

**Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***

155. Plaintiff brings this claim on behalf of herself and the Class, and repeats and re-alleges each and every paragraph in the Complaint as if fully set forth herein.

156. California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

157. Defendant engaged in unlawful business practices in connection with its disclosure of Plaintiff's and Class Members' Private Information to unauthorized third parties, including Google, in violation of the UCL.

158. Defendant's acts, omissions, and conduct, as alleged herein, constitute "business practices" within the meaning of the UCL.

159. Defendant violated the "unlawful" prong of the UCL by violating, *inter alia*, Plaintiff's and Class Members' constitutional rights to privacy, state and federal privacy statutes, and state common law.

160. Defendant's acts, omissions, and conduct also violate the unfair prong of the UCL because those acts, omissions, and conduct offend public policy (including the federal and state privacy statutes and state consumer protection statutes, such as the ECPA, CIPA, CMIA, and HIPAA) and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiff and Class Members.

161. The harm caused by Defendant's conduct outweighs any potential benefits attributable to such conduct, and there were reasonably available alternatives to further Defendant's legitimate business interests other than Defendant's conduct described herein.

162. Plaintiff and Class Members suffered from a loss of the benefit of their bargain with Defendant because they overpaid for services they believed included data security sufficient to maintain their Private Information as confidential.

163. As a result of Defendant's violations of the UCL, Plaintiff and Class Members are entitled to injunctive relief. This is particularly true since the dissemination of Plaintiff and Class Members' information is ongoing.

164. As result of Defendant's violations of the UCL, Plaintiff and Class Members have suffered injury in fact and lost money or property, including but not limited to payments to Defendant for services and/or other valuable consideration, *e.g.*, access to their private and personal data.

165. Plaintiff and Class Members would not have used Defendant's services, or would have paid less for them, had they known Defendant was breaching confidentiality and disclosing their Private Information to social media and tech giants such as Google.

166. The unauthorized access to Plaintiff's and Class Members' Private Information has also diminished the value of that information.

167. In the alternative to those claims seeking remedies at law, Plaintiff and Class Members allege that there is no plain, adequate, and complete remedy that exists at law to address Defendant's unlawful and unfair business practices.

168. Further, no private legal remedy exists under HIPAA. Therefore, Plaintiff and Class Members are entitled to equitable relief to restore Plaintiff and Class Members to the position they would have been in had Defendant not engaged in unfair competition, including an order enjoining Defendant's wrongful conduct, restitution, and disgorgement of all profits paid to Defendant as a result of its unlawful and unfair practices.

## **COUNT VI**

### **Invasion of Privacy Under California's Constitution**

169. Plaintiff brings this claim on behalf of herself and the Class, and repeats and re-alleges each and every paragraph in the Complaint as if fully set forth herein.

170. Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their Private Information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites for the provision of insurance and health care without being subjected to wiretaps, pin registers, and/or trap and trace devices without their knowledge or consent.

171. By using Google Analytics and accompanying Tracking Technologies to communicate patients' individually identifying information alongside their confidential medical communications and insurance information, Defendant intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution.

172. Plaintiff and Class Members had a reasonable expectation that their communications, identity, health information and other data would remain confidential, and that Defendant would not install wiretaps, pin registers, and/or trap and trace devices to secretly transmit their communications and routing information.

173. Plaintiff and Class Members did not authorize Defendant to transmit their Private Information to third parties, nor did they consent to allowing third parties to intercept, receive, and view those communications.

174. This invasion of privacy is serious in nature, scope, and impact because it relates to patients' private medical communications. Moreover, it constitutes an egregious breach of the societal norms underlying the right of privacy.

175. As a result of Defendant's actions, Plaintiff and Class Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

176. Plaintiff and Class Members have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled to just compensation, including monetary damages.

177. Plaintiff and Class Members seek appropriate relief for this injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests.

178. Plaintiff and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendant's actions, directed at injuring Plaintiff and Class Members in conscious disregard of their rights.

179. Such damages are needed to deter Defendant from engaging in such conduct in the future.

180. Plaintiff also seeks such other relief as the Court may deem just and proper.

**COUNT VII**

**Breach of Implied Contract**

181. Plaintiff brings this claim on behalf of herself and the Class, and repeats and re-alleges each and every allegation contained in the Complaint as if fully set forth herein.

182. When Plaintiff and Class Members provided their Private Information to Defendant in exchange for services, they entered into an implied contract pursuant to which Defendant agreed to safeguard and not disclose their Private Information without consent.

183. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

184. Plaintiff and Class Members would not have entrusted Defendant with their Private Information in the absence of an implied contract between them and Defendant obligating Defendant to not disclose Private Information without consent.

185. Defendant breached these implied contracts by disclosing Plaintiff's and Class Members' Private Information to third parties.

186. As a direct and proximate result of Defendant's breaches of these implied contracts, Plaintiff and Class Members sustained damages as alleged herein. Plaintiff and Class Members would not have used Defendant's services, or would have paid substantially less for these services, had they known their Private Information would be disclosed.

187. Plaintiff and Class Members are entitled to compensatory and consequential damages as a result of Defendant's breach of implied contract.

**COUNT VIII**

**Unjust Enrichment**

188. Plaintiff brings this claim on behalf of herself and the Class, and repeats and re-alleges each and every allegation contained in the Complaint as if fully set forth herein. This claim is brought in the alternative to breach of implied contract.

189. Defendant benefits from the use of Plaintiff's and Class Members' Private Information and unjustly retained those benefits at their expense.

190. Plaintiff and Class Members conferred a benefit upon Defendant in the form of Private Information that Defendant collected from Plaintiff and Class Members, without authorization and proper compensation. Defendant consciously collected and used this information for its own gain, providing Defendant with economic, intangible, and other benefits, including substantial monetary compensation.

191. Defendant unjustly retained those benefits at the expense of Plaintiff and Class Members because Defendant's conduct damaged Plaintiff and Class Members, all without providing any commensurate compensation to Plaintiff and Class Members.

192. The benefits that Defendant derived from Plaintiff and Class Members were not offered by Plaintiff and Class Members gratuitously and rightly belong to Plaintiff and Class Members. It would be inequitable under unjust enrichment principles for Defendant to be permitted to retain any of the profit or other benefits wrongly derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

193. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

## COUNT IX

### Invasion of Privacy – Publication of Private Facts

194. Plaintiff brings this claim on behalf of herself and the Class, and repeats and re-alleges each and every paragraph in the Complaint as if fully set forth herein.

195. Plaintiff's and Class Members' Private Information, including their communications and Private Information, are private facts that third parties acquired without the knowledge or consent of Plaintiff and Class Members.

196. Defendant gave publicity to Plaintiff's and Class Members' Private Information and the content of their communications by sharing them with unauthorized third parties, including Google, which builds massive databases of individual consumer profiles from which to sell targeted advertising and make further disseminations.

197. Plaintiff and Class Members did not know that Defendant was using software to track and disclose their Private Information.

198. Defendant's surreptitious tracking and commoditization of Plaintiff's and Class Members' Private Information is highly offensive to a reasonable person.

199. In disseminating Plaintiff's and Class Members' personal information without their consent, Defendant acted with oppression, fraud, or malice.

200. Plaintiff and Class Members have been damaged by the publication of their Private Information and are entitled to just compensation in the form of actual damages, general damages, unjust enrichment, nominal damages, and punitive damages.

## COUNT X

### Breach of Confidence

201. Plaintiff brings this claim on behalf of herself and the Class, and repeats and re-alleges each and every paragraph in the Complaint as if fully set forth herein.

202. Plaintiff and Class Members disclosed their Private Information in confidence with Defendant through Defendant's Website and App.

203. Plaintiff and Class Members have an interest in keeping their Private Information confidential.

204. The information disclosed in confidence is Private Information and the Defendant had knowledge that it was confidential due to Federal and State laws that protect such information (i.e., CIPA and HIPAA).

205. Plaintiff and Class Members had an expectation that the confidential information disclosed to Defendant would be kept in confidence with Defendant due to their relationship with Defendant as an insurance and health services provider and Federal and State laws that protect such information (e.g., CIPA, CMIA, and HIPAA).

206. Defendant violated its duty to protect the confidentiality of Plaintiff's and Class Members' information by using Tracking Tools to communicate patients' Private Information with unauthorized third parties.

207. Defendant disclosed Plaintiff's and Class Members' Private Information for Defendant's own economic benefit in Defendant's own business and disclosing it without Plaintiff's and Class Members' consent.

208. Defendant disclosed and disseminated Plaintiff's and Class Members confidential communications to a broad audience including Google and others.

209. At no time did Defendant offer to purchase or financially compensate Plaintiff and Class Members for the use of their confidential information for Defendant's advertising purposes.

210. As a result of Defendant's actions, Plaintiff and Class Members suffered harm and injury, including but not limited to a breach of their confidence, were damaged as a direct and proximate result of Defendant's breach, and are entitled to just compensation, including monetary damages and such other relief as the Court may deem just and proper.

**COUNT XI**

**Invasion of Privacy – Intrusion Upon Seclusion**

211. Plaintiff brings this claim on behalf of herself and the Class, and repeats and re-alleges each and every paragraph in the Complaint as if fully set forth herein.

212. Plaintiff and Class Members had a reasonable expectation of privacy in their communications with Defendant via its Website and App.

213. Plaintiff and Class Members communicated sensitive Private Information that they intended for only Defendant to receive and which they understood Defendant would keep private as their insurance provider and healthcare provider.

214. Defendant's disclosure of the substance and nature of Plaintiff's and Class Members' communications to third parties without their knowledge and consent is an intentional intrusion on Plaintiff's and Class Members' solitude or seclusion.

215. Plaintiff and Class Members had a reasonable expectation that their communications, identity, health information, and other data would remain confidential, and that Defendant would not install: (1) wiretaps to secretly transmit their communications to unauthorized third parties; or (2) pin registers and/or trap and trace devices.

216. Defendant was authorized to receive Plaintiff's and Class Members' Private Information, but it was not authorized to: (1) commandeer Plaintiff's and Class Members' web browsers and devices, thereby forcing those devices to transmit information to Google without their consent or authorization.

217. As such, Defendant obtained Plaintiff's and Class Members' Private Information under false pretenses and/or exceeded its authority to obtain the Private Information.

218. As a result of Defendant's actions, Plaintiff and Class Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

219. Plaintiff and Class Members have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled to just compensation, including monetary damages.

220. Plaintiff and Class Members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class Members for the harm to their privacy interests.

221. Plaintiff and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendant's actions, directed at injuring Plaintiff and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendant from engaging in such conduct in the future.

**PRAYER FOR RELIEF**

Plaintiff, on behalf of herself and the proposed Class, respectfully requests that the Court grant the following relief:

(a) Certification of this action as a class action and appointment of Plaintiff and Plaintiff's counsel to represent the Class;

(b) A declaratory judgement that Defendant violated: (1) the Electronic Communications Privacy Act; (2) the California Invasion of Privacy Act; (3) the California Confidentiality of Medical Information Act; (4) the Unfair Competition Law; (5) Plaintiff's and Class Members' privacy rights as provided at common law and pursuant to the California Constitution; and (6) Plaintiff's and Class Members' other rights under common law;

(c) An order enjoining Defendant from engaging in the unlawful practices and illegal acts described herein; and

(d) An order awarding Plaintiff and the Class: (1) actual or statutory damages; (2) punitive damages—as warranted—in an amount to be determined at trial; (3) prejudgment interest on all amounts awarded; (4) injunctive relief as the Court may deem proper; (5) reasonable attorneys' fees and expenses and costs of suit pursuant to Cal. Code of Civil Procedure § 1021.5 and/or other applicable law; (6) pre-judgment and post-judgment interest as provided by law; and (7) such other and further relief as the Court may deem appropriate

**JURY DEMAND**

Plaintiff demands trial by jury.

Dated: April 18, 2025 By: */s/ Michael McShane*

Michael McShane (SBN 127944)
Ling Y. Kuang (SBN 296873)
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, California 94102
mmcshane@audetlaw.com
lkuang@audetlaw.com

Brett R. Cohen (SBN 337543)
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, New York 11514
Tel: (516) 873-9550
bcohen@leedsbrownlaw.com

Jeffrey S. Goldenberg (Pro hac vice to be filed)
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Tel: (513) 345-8291
jgoldenberg@gs-legal.com

Charles E. Schaffer (Pro hac vice to be filed)
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
cschaffer@lfsblaw.com

***Counsel for Plaintiff and Proposed Class***